UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

TRUSTEES OF THE ELECTRICAL
WORKERS HEALTH AND WELFARE
TRUST; TRUSTEES OF THE ELECTRICAL
WORKERS PENSION TRUST; AND
TRUSTEES OF THE LAS VEGAS
ELECTRICAL JOINT APPRENTICESHIP
AND TRAINING TRUST FUND,

   Plaintiffs,

v.

WILLIAM CAMPBELL, an individual;
HEATHER NOWSKE, an individual;
KENNETH SLATER, an individual;
NORMAN BARTON, an individual; and RON
SLATER, an individual,

   Defendants.

2:07-cv-00724-LRH-LRL

ORDER

   Before the court is Plaintiffs Trustees of the Electrical Workers Health and Welfare Trust, Trustees of the Electrical Workers Pension, and Trustees of the Las Vegas Electrical Joint Apprenticeship and Training Trust Fund's (collectively "Plaintiffs") Application for Default Judgment (#26[1]). In response to the court's October 7, 2009, Order (#28), Plaintiffs have also filed a supplement (#29) to the motion for default judgment. Defendants William Campbell, Heather

---

[1] Refers to the court's docket entry number.

Nowske, Kenneth Slater, Norman Barton, and Ron Slater (collectively "Defendants") have not responded.

## I. Facts and Procedural History[2]

This case arises under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1462.  Defendants are officers, directors, and/or owners, of Vission Integration & Power ("Vission"), a Nevada Corporation.  Vission employs individuals ("bargaining unit employees") that are members of or are represented by the International Brotherhood of Electrical Workers Local Number 357 ("Union") Master Labor Agreement ("Master Agreement").  Plaintiffs are trustees of various trusts created for the benefit of the bargaining unit employees.

On September 8, 2005, Vission executed a Letter of Assent with the National Electrical Workers Association, wherein Vission agreed to make contributions to the trusts on behalf of the bargaining unit employees and to be bound by the provisions of the Master Agreement.  The Master Agreement also incorporates and binds Vission to the Trust Agreements establishing the trusts.

From September of 2005, through April of 2006, Vission failed to make the required contributions to the trusts.  As a result of Vission's delinquency, according to an audit conducted by Plaintiffs' auditor, Vission owes the trusts $84,994.96 in unpaid benefits, $15,440.83 in liquidated damages, $19,211.51 in interest, and $3,017.50 in audit fees.

On July 16, 2006, to recover these funds, Plaintiffs filed an action against Vission in the U.S. District Court for the District of Nevada.  *See* 2:06-cv-872.  On December 10, 2007, the court granted Plaintiffs' Motion for Summary Judgment because "[Plaintiffs'] Motion was not responded to within the time required by the Rules of the Court."  (Pls.' Mot. Default J. (#26), Infuso Aff., Tab D.)  Accordingly, the court entered judgment against Vission.  (*Id.*)

After discovering that Vission lacked any assets, Plaintiffs filed the action now before the court.  Plaintiffs allege Defendants, as "officers, directors, and/or owners of Vission," breached

---

[2]The following facts are taken primarily from the complaint.

2

their fiduciary duties under ERISA by failing to pay the required contributions to the trusts. (Compl. (#1), ¶ 13.)

On August 8, 2007, Plaintiffs attempted to serve Defendant Barton by leaving a copy of the summons and complaint at an address in California. Defendant Barton never responded, and on November 12, 2007, the Clerk entered default against Defendant Barton (#16).

Plaintiffs were unable to locate the remaining defendants. As a result, on November 13, 2007, the court granted Plaintiffs' Motion for Service by Publication of Summons (#19). Plaintiffs effectuated such service on January 15, 2008. Defendants failed to respond, and on May 12, 2008, the Clerk entered default against the remaining defendants (#25). Plaintiffs now ask the court to enter default judgment against each of the defendants.

**II.   Discussion**

Obtaining a default judgment is a two-step process governed by Federal Rule of Civil Procedure 55. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, Rule 55(a) provides, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Second, after the clerk enters default, a party must seek entry of default judgment under Rule 55(b).

Upon entry of default, the court takes the factual allegations in the non-defaulting party's complaint as true. Nonetheless, while entry of default by the clerk is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). Instead, whether a court will grant a default judgment is in the court's discretion. *Id.* (citations omitted).

The Ninth Circuit has identified the following factors as relevant to the exercise of the court's discretion in determining whether to grant default judgment: (1) the possibility of prejudice

to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72. The court will consider these factors below.

### A. Merits of Plaintiffs' Substantive Claims

Plaintiffs allege, "[Defendants] have breached their duty as ERISA fiduciaries to make [Plaintiffs] whole for all delinquent employee benefits that are due from Vission." (Compl. (#1), ¶ 19.) As a result, Plaintiffs contend Defendants are personally liable to repay any losses resulting from their breach of duty, including the unpaid employee benefits, liquidated damages, interest, audit fees, and attorneys' fees.

ERISA provides, "Any person who is a fiduciary with respect to a plan who breached any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . ." 29 U.S.C. § 1109(a). Under § 1132(a)(2), Plaintiffs, as trustees, may bring a civil action to enforce § 1109. *See Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988); *see also* 29 U.S.C. §§ 1002(21)(A), 1132(a)(2). To determine whether Defendants are liable under § 1109(a), the court considers (1) whether Defendants are fiduciaries of the plans, and (2) whether Defendants breached their fiduciary duties.

#### 1. Defendants' Fiduciary Status

In relevant part, ERISA defines a fiduciary as a person who exercises discretionary authority or control over the management of the plan or the plan's assets. 29 U.S.C. § 1002(21)(A). Thus, Defendants are liable as fiduciaries if (1) the unpaid contributions are trust assets, and (2) Defendants exercised authority or control over those assets. *See Bd. of Trustees v. J.R.D. Mech. Services, Inc.*, 99 F. Supp. 2d 1115, 1120 (C.D. Cal. 1999).

4

**a      Trust Assets**

Plaintiffs contend the unpaid employer contributions became trust assets the moment they became due. The Ninth Circuit has held, "Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation . . . ." *Cline v. The Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000). Nonetheless, although the Ninth Circuit has not addressed the issue, other circuits and district courts in the Ninth Circuit following the *Cline* rule have recognized an exception where the agreement governing the plan identifies unpaid employer contributions as plan assets. *See Rahm v. Halpin*, 566 F.3d 286, 290 (2d. Cir. 2009) ("Although [the parties] were free to contractually provide for some other result, nothing in the Plan Documents indicates that they did so."); *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003) ("The proper rule . . . is that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise."); *see also Trustees of the S. Cal. Pipe Trades Health & Welfare Trust Fund v. Temecula Mech., Inc.*, 438 F. Supp. 1156, 1165 (C.D. Cal. 2006) (finding that the statement in *Cline* did not preclude application of the "commonly applied exception when the plan document itself identifies unpaid employer contributions as a plan asset.")

The court agrees with the reasoning of these courts. The Department of Labor has informally advised that the "assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law. In general, the assets of a welfare plan would include any property, tangible or intangible, in which the plan has a beneficial ownership interest." 93 Op. Dep't of Labor 14A (May 5, 1993). Thus, to determine what is included in the plan assets, the court considers "any contract or other legal instrument involving the plan, as well as the actions and representations of the parties involved." *Id.*

Here, the Collection Policy provides that "all money owed to the Trusts . . . (whether paid, unpaid, segregated or otherwise traceable, or not) become[s] Trust assets on the Due Date." (*See*

5

1  Pl.'s Mot. Default J. (#26), Etherington Aff., Tab F at 1B.)  The Policy further states that employer
2  contributions are due on the 15th day of each month, contributions received after the due date are
3  delinquent, and, once delinquent, the employer is "immediately liable" for the unpaid contributions.
4  (*Id.* at 2A.)  Thus, the language of the Collection Policy indicates that the unpaid employer
5  contributions became trust assets immediately upon their delinquency.  Accordingly, the court finds
6  that under the agreements governing the trusts, the unpaid contributions are trust assets.[3]

        **b.**    **Exercise of Authority and Control Over Plan Assets**

8        Plaintiffs contend, "Defendants had discretionary authority and control over the assets of the
9  Trust Funds because they had primary responsibility to direct and control the financial resources of
10  Vission." (Pls.' Supplement to App. for Default J. (#29) at 5.)  The Ninth Circuit has stated, "The
11  words of the ERISA statute, and its purpose of assuring that people who have practical control over
12  an ERISA plan's money have fiduciary responsibility to the plan's beneficiaries, require that a
13  person with authority to direct payment of a plan's money be deemed a fiduciary." *IT Corp. v.*
14  *Gen. Am. Life Ins.*, 107 F.3d 1415, 1421 (9th Cir. 1997).

15        ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of
16  control and authority over the plan, [thereby] expanding the universe of persons subject to fiduciary
17  duties - and to damages- under [section 1109]." *Mertens*, 508 U.S. at 262 (*citing* 29 U.S.C. §
18  1002(21)(a)); *see also Acosta v. Pac. Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991) ("[A] person's
19  actions, not the official designation of his role, determine whether he enjoys a fiduciary status.")
20  Thus, "[a] plan fiduciary includes not only those named as fiduciaries in the plan documents but
21  anyone else who exercises discretionary control or authority respecting the plan's management or
22  disposition of its assets." *Temecula Mech., Inc.*, 438 F. Supp. 2d at 1167 (*citing Mertens v. Hewitt*

---

[3] The court notes that Plaintiffs also contend that the liquidated damages, interest, audit fees, and attorneys' fees are also trust assets over which Defendants exercised control.  However, while, as discussed below, Defendant Barton appeared to exercise authority or control over the unpaid contributions, it cannot be said that Barton similarly exercised control over the liquidated damages, interest, audit fees, and attorneys' fees that automatically accrued when the contributions became delinquent.

*Associates.*, 508 U.S. 248, 251 (1993); 29 U.S.C. § 1002(21)(a)).

Above, the court concluded that the unpaid contributions qualify as assets of the trusts. As such, if Defendants had the authority to control and direct the payment of the unpaid contributions, they are fiduciaries under ERISA. To demonstrate that Defendants had this authority, Plaintiffs have submitted the following evidence: (1) documents filed with the Nevada Secretary of State and the Nevada Contractors Board identifying Defendant Barton as the Director of Vission, Defendant Campbell as the President of Vission, Defendant Nowske as the Secretary of Vission, and Defendant Kenneth Slater as the Treasurer of Vission; (2) a letter from Defendant Barton written on March 31, 2006, stating, "This letter is to certify that Vission . . . is current in all monetary contributions and employee deductions to the IBEW Local 357 for January and February 2006 and will be making our next contributions on March 15, 2006." (Pls.' Supplement to App. for Default J. (#29), Ex. 3); (3) checks made out to a variety of organizations, including the Electrical Local Pension Fund A and B and the Electrical Health & Welfare Fund allegedly signed by Defendants Barton and Slater, but whose signatures are illegible; and (4) monthly contribution reports sent by Defendant Barton to the National Electrical Benefit Fund indicating the hours worked and the money earned by various employees.

As a preliminary matter, the court notes that the mere status of Defendants as the Director, President, Secretary, and Treasurer of Vission alone does not establish that Defendants were fiduciaries under ERISA. *See Acosta*, 950 F.2d at 618 ("[A] person's actions, not the official designation of his role, determine whether he enjoys a fiduciary status."); *see also* 29 C.F.R. § 2509.75-8 (noting that an officer of an employer that sponsors an employee benefit plan is not a fiduciary solely by reason of holding such office). Instead, the court must look to Defendants' acts and responsibilities to determine whether they are fiduciaries. *See Acosta*, 950 F.2d at 618; *Temecula Mech., Inc.*, 438 F. Supp. 2d at 1168.

As to Defendants Campbell, Nowske, and Kenneth Slater, there is no evidence before the court suggesting that these defendants controlled the disposition of the unpaid contributions. Although the checks Plaintiffs have submitted could indicate that the individual signing those checks had control over the unpaid contributions, the checks are both illegible and unauthenticated. Beyond evidence demonstrating their status as Vission's President, Secretary, and Treasurer, it is not clear what role these defendants played in controlling the payment of the unpaid contributions. Accordingly, the court will deny default judgment as to these defendants.[4]

With regard to Defendant Barton, the evidence indicates that Barton had at least some control over the unpaid contributions. For example, Barton's letter certifying that Vission was current on its contributions to IBEW Local 357 suggests that Barton was involved in and could control the payment of these funds. Because "'[a]ny' control over disposition of plan money makes the person who has the control a fiduciary," *Gen. Am. Life Ins.*, 107 F.3d at 1421, the court finds that Defendant Barton is a fiduciary within the meaning of ERISA.

### 2. Breach of Fiduciary Duties

ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of (i) providing benefits to participants and their beneficiaries . . . ." 29 U.S.C. § 1104(a)(1)(A)(i). Plaintiffs have established that Defendant Barton controlled the payment of certain employer contributions, and Barton has failed to make these contributions. Because Barton has withheld benefits owing to the trusts, Barton has breached his fiduciary duties. Accordingly, as to Defendant Barton, Plaintiffs have demonstrated that the merits of their substantive claim favors awarding default judgment.

Nonetheless, at this time, it is not clear that Plaintiffs have provided Barton with proper notice of this action pursuant to Federal Rule of Civil Procedure 4. Although on August 8, 2007,

---

[4] Plaintiffs have also not submitted any evidence demonstrating what role Defendant Ron Slater, one of Vission's owners, played in the management and control of Vission's funds. As such, the court will deny default judgment as to Ron Slater.

8

Plaintiffs delivered a copy of the summons and the complaint to 17201 Sandlewood Dr. in Riverside, California, and an unidentified adult female accepted the documents, Plaintiffs have not demonstrated (1) how this woman is related to Barton and this address or (2) that this address is Barton's "dwelling or usual place of abode." *See* Fed. R. Civ. P. 4(e)(2)(B). Accordingly, the court cannot enter default judgment at this time. Before the court considers the remaining default judgment factors, the court will grant Plaintiffs additional time to demonstrate that Barton was properly served.

IT IS THEREFORE ORDERED that, as to Defendants Campbell, Nowske, Kenneth Slater, and Ron Slater, Plaintiffs' Application for Default Judgment (#26) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiffs shall have thirty (30) days from the entry of this order to demonstrate that Defendant Barton has been properly served in compliance with the requirements of Federal Rule of Civil Procedure 4.

IT IS SO ORDERED.

DATED this 11th day of February, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE